IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| T.P., | : | |
| | : | **Case No. 2:21-cv-04933** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| v. | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **WYNDHAM HOTELS &** | : | |
| **RESORTS, INC.,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

### OPINION & ORDER

This matter is before this Court on Defendants', Wyndham Hotels & Resorts, Inc. (hereinafter "Wyndham") and Best Western International, Inc. (hereinafter "BWI"), Motions to Dismiss. (ECF Nos. 36, 40). For the following reasons, Defendant Wyndham's Motion to Dismiss is hereby **DENIED.** Defendant BWI's Motion to Dismiss is hereby **GRANTED in part** with regards to its TVPRA retroactivity argument **and DENIED in part** with regards to Defendant BWI's remaining arguments.

## I.  BACKGROUND

Plaintiff, T.P., was held captive by means of "violence, threats, and induced dependence on illegal substances" and was trafficked for sex from 1993 through 2016. (ECF No. 1 at ¶ 36). She alleges that this trafficking took place at a Best Western by BWI and at a Super 8 and Travelodge by Wyndham in Columbus, Ohio. (*Id.*, ¶ 40). Plaintiff now seeks to hold Defendants liable under the civil liability beneficiary theory of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (*Id.*, ¶ 117) Plaintiff alleges that Defendants Wyndham and BWI knew or should have known T.P. was trafficked on their properties and they

had a statutory obligation not to benefit financially from the venture. (*Id.*, ¶¶ 65–72, 118). As a result, T.P. argues that she suffered "substantial physical and psychological injuries." (*Id.*, ¶ 120).

T.P. argues that Defendants "hewed to a common policy of actively ignoring signs of ongoing human trafficking." (*Id.*, ¶ 50). Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking: visiting the same hotels repeatedly at intervals; visible bruising and physical and verbal abuse occurring in public areas of the hotel and in front of the same hotel staff on multiple occasions; cash payment for rooms; excessive requests for towels and linens; unusual numbers of used condoms in the garbage bins; requesting rooms away from other guests; obvious signs of illegal drug use; and public altercations. (*Id.* at ¶¶ 42–46). T.P. asserts that hotel staff also engaged in forced sexual activities with her. (*Id.* at ¶ 48). For example, a man named Mohammed, who Plaintiff believed to be the owner of the Best Western and Travelodge traded "free or discounted rooms in the hotel[s]" to T.P.'s traffickers in exchange for sex acts from T.P. (*Id.*). T.P further alleges that hotel staff at the Super 8 where she was trafficked did not step in when her trafficker beat her in the parking lot of the hotel. (*Id.*).

T.P. maintains that Defendants have long been on notice of repeated incidences of sex trafficking at these hotel locations and did not take adequate measures to prevent human trafficking despite having a duty and responsibility to act. (*Id.*, ¶¶ 27, 65). For example: (1) the Best Western was declared a "public nuisance" by the Columbus City Attorney for being a "haven for prostitution"; (2) online reviews of the Best Western hotel location included "[l]ots of hookers and drugs," and "[y]uck . . . watch out for the . . . drug dealers and/or pimps in the parking lot, foyers and hallways!!!"; (3) a TripAdvisor review of Wyndham's Super 8 stated "[t]oday we were evicted from the hotel by the police due to the drug/prostitution ring being ran out of it"; and (4) a review

2

of Wyndham's Travelodge stating there "were hookers walking around" and recommending not to stay at the location. (*Id.*, ¶ 72). As a direct and proximate result of Defendants' refusal to prevent human trafficking on these properties, Plaintiff argues she was exploited repeatedly and victimized. (*Id.*, ¶ 52). Plaintiff seeks compensatory and punitive damages. (*Id.* at 33).

T.P.'s Complaint initially brought a conspiracy claim against Defendants. (*Id.*, ¶ 122). Red Roof Inns, Inc. (hereinafter "Red Roof") is also a defendant in this matter but has not filed a motion to dismiss. Plaintiff and Defendants Wyndham and BWI stipulated to dismissal of the conspiracy claim (ECF Nos. 52, 54) in April 2022, however, and this Court granted an order dismissing the claim. (ECF No. 56). Plaintiff maintains Count II, the conspiracy claim, against Defendant Red Roof. Therefore, the TVPRA claim is the only remaining allegation at issue with Defendants Wyndham and BWI in these Motions to Dismiss.

## II. STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. This Court, however,

3

is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Finally, the Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III. LAW & ANALYSIS

#### A. Preliminary Matters

##### 1. Outside Documents Introduced by Defendant BWI

Defendant BWI first argues they are an improper party to this action because they are not a parent company for BWI-branded hotels, which are independently owned and operated. (ECF No. 40 at 4). BWI asks this Court to take judicial notice of publicly available documents demonstrating another entity's ownership of the Columbus Best Western property and submits a copy of its franchise Membership Agreement with that hotel. (ECF Nos. 40 at 5; 40-3). Because Plaintiff alleges that Defendants operate the branded hotels under franchise agreements and maintain significant control over these locations (ECF No. 1, ¶¶ 57–64, 126), Defendant BWI argues that this Court can "consider documents that [it] attaches to a motion if the documents are

referred to in the Complaint and are central to [the Plaintiff's] claims without converting the motion to one for summary judgment." (ECF No. 40 at 5 (citing *McLaughlin v. CNX Gas Co., LLC*, 639 Fed. Appx. 296, 298 (6th Cir. 2012); and *Weiner v. Klais & Co.*,108 F.3d 86, 90 (6th Cir. 1997) (finding it was appropriate for defendants to attach ERISA plan documents to a motion to dismiss, where Plaintiff's claims were based on rights under the plan "which were controlled by the plans' provisions as described in the plan documents.")).

Plaintiff responds that "whether or not Best Western owns the physical property that Plaintiff was trafficked has no bearing on whether it is liable for a TVPRA beneficiary claim." (ECF No. 55 at 14). Second, Plaintiff argues that BWI improperly relies on outside documents, which are better suited for the summary judgment stage after discovery occurs. (*Id.* at 15). Plaintiff contends that the documents submitted with BWI's Motion to Dismiss are "cherry-picked" and do nothing to advance Defendant Best Western's argument, but instead serve as an implicit acknowledgement that Plaintiff "has properly pleaded an agency theory of liability." (*Id.*).

Indeed, "it is elementary that the Court does not (and cannot) consider matters outside the four corners of the complaint when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 499 (S.D. Ohio 2012). There is an exception to this rule, however, which allows the court to also "consider documents that a defendant attaches to a motion to dismiss if the document are referred to in the complaint and are central to the plaintiff's claim." *Id.* (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). A court may also consider public records and any other matters of which the court may

take judicial notice under Rule 201(b) of the Federal Rules of Evidence.[1] *Jackson v. City of Columbus*, 194 F. 3d 737, 745 (6th Cir. 1999).

Although Plaintiff's Complaint only makes two references to the relevant "franchise agreement[s]", her underlying claim is that Defendants maintain control over the operations, branding, and employment-related decisions of the local hotels and profit from the hotels' revenue through a "web of franchise agreements." (ECF No. 1, ¶¶ 57, 126). This link is essential to her claim that Defendants are liable under the TVPRA. (*Id.*, ¶¶ 118–119). Therefore, Defendant BWI has introduced properly the Membership Agreement at this stage of the litigation.

BWI also introduced documents demonstrating property ownership and mortgage responsibility for its Columbus property, which are publicly available on the Franklin County Treasurer's and County Recorder's websites. Defendant is correct that public records maintained by a county Treasurer's or Recorder's office are the types of records to which courts in this District have often afforded judicial notice. *See Morse v. Fifty West Brewing Co. LLC, et al.*, No. 1:21-cv-377, 2022 WL 974342, at *3 (S.D. Ohio Mar. 31, 2022) (concluding that public records maintained by secretaries of state are the types of records to which court can take judicial notice); Fed. R.

---

[1] **Fed. R. Evid. 201:**
**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
    **(1)** is generally known within the trial court's territorial jurisdiction; or
    **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
**(c) Taking Notice.** The court:
    **(1)** may take judicial notice on its own; or
    **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.
**(d) Timing.** The court may take judicial notice at any stage of the proceeding.
**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Evid. 201(b)(2) (stating that courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Hence, ownership of the physical property on which the Columbus Best Western hotel sits and information regarding the party responsible for its mortgage has no impact on the franchise agreement between Defendant BWI and its Columbus hotel. Even though Plaintiff states that on information and belief, Defendant BWI "owned, supervised, and/or operated" the Best Western, the crux of Plaintiff's argument is that Defendant BWI was involved in a commercial venture with the hotel and profited from said agreement. (ECF No. 1, ¶ 15). Whether Defendant actually owned the physical property on which the hotel sits does not fall within the four corners of the allegations in the Complaint and is improperly introduced at this stage.

Therefore, this Court finds that BWI's Membership Agreement (ECF No. 40-3) was properly introduced, but the property ownership and mortgage documents (ECF Nos. 40-1 and 40-2) are improperly introduced and this Court will not take judicial notice of them.

### 2. *Defendant BWI's Improper Party Argument*

As previously stated, Defendant BWI argues that it is an improper party to this action because it is not a parent company for BWI-branded hotels, which are independently owned and operated. (ECF No. 40 at 4). Defendant BWI's franchise agreement ("The Membership Agreement") states in relevant part:

> The relationship of Best Western to its members is one of an *independent contractor*. Neither party has the power to obligate or bind the other in any way. No relationship of partners, joint ventures or *agents is created* . . . BEST WESTERN HAS NO RESPONSIBILITY FOR THE USE, CONDITION OR OPERATION OF THE HOTEL OR THE SAFETY OF THE DESIGN OR ANY STRUCTURE OR PRODUCT. BEST WESTERN HAS NO CONTROL OVER OR RESPONSIBILITY FOR ANY DECISION AFFECTING THE

7

EMPLOYMENT OR SUPERVISION OF ANY PERSON EMPLOYED IN CONNECTION WITH THE HOTEL.

(ECF No. 40-3 at 5) (emphasis added). Based on this language, Defendant BWI maintains that this Court should dismiss "the Complaint because the contents of the agreement unequivocally establish BWI did not have control over employment or supervision of hotel employees and thus cannot be held vicariously liable for alleged trafficking at the hotel." (ECF No. 57 at 2). Plaintiff contends that BWI's improper party argument is inappropriate for this stage of the litigation as it would be "better suited at summary judgment once the records has been developed through discovery." (ECF No. 55 at 15).

While this Court can consider BWI's franchise Membership Agreement at the Motion to Dismiss stage, this Court disagrees with Defendant Best Western's improper party argument and **DENIES** its request to dismiss this action on that basis. The purpose of a Motion to Dismiss is to test "the plaintiff's cause of action as stated in the complaint, not [to] challenge [] the plaintiff's factual allegations." *Golden*, 404 F.3d at 958–59. Plaintiff contends that Defendants promulgate policies, procedures, and standards governing branding, operations, and employee training to which franchisees must adhere as part of their franchise agreements. (ECF No. 1 at 54–63). Further, Plaintiff alleges that Defendants failed to implement training and policies that would help employees identify and combat instances of sex trafficking in their hotels. (*Id.* at 58). Finally, Plaintiff argues that franchisee locations pay about 10% of their gross revenue back to Defendants for the privilege of using the brand's name and standards. (*Id.* at 64). As discussed more fully

below, these allegations are sufficient to state a cause of action under the TVPRA, and it would be improper for this Court to allow a challenge to the Plaintiff's factual allegations at this stage.[2]

### 3.  Defendant BWI's Retroactivity Argument

Plaintiff asserts that Defendant BWI contends that the statute of limitations bars TVPRA claims for conduct prior to December 23, 2008. (ECF No. 55 at 14–15). Plaintiff is mistaken, however, because Defendant BWI instead asserts that the TVPRA is not meant to be applied retroactively. (ECF No. 40 at 6). Plaintiff alleges that she was trafficked at BWI's Best Western in Columbus from approximately 2001–2015. (ECF No. 1, ¶ 40). Defendant explains that the relevant portion of 18 U.S.C. § 1595(a) was amended to include the "beneficiary theory," and did not become effective until December 23, 2008. (ECF No. 57 at 3). Therefore, Defendant BWI argues it cannot be liable for Plaintiff's trafficking allegations prior to December 23, 2008 and asks this Court to dismiss with prejudice any claims asserted by Plaintiff that arose before the statute's effective date. (*Id.*).

Although it is well settled that Congress "has the authority to enact retroactive statutes, courts ordinarily do not apply statutes retroactively unless a statute evidences congressional intent

---

[2] Even if this Court were to consider the merits of BWI's argument, this theory does not address the heart of Plaintiff's allegations nor is it sufficient to challenge those allegations. In isolation, the language in Defendant's Membership Agreement appears to disavow any relationship between Defendant BWI and its franchisee other than a financial relationship between that of a principal and an independent contractor.

First, Defendant BWI advances this argument to demonstrate that it cannot be held vicariously liable for the actions of the local hotel's employees and the harm alleged by T.P. (ECF No. 57 at 2). Plaintiff's TVPRA claim, however, alleges direct liability (ECF No. 1), and therefore, the Membership Agreement cannot be used to challenge Plaintiff's claim. Second, using this document to counter a vicariously liability claim is improper. This document cannot be read in isolation because it does not provide this Court with sufficient information about Defendant BWI's financial and operational relationship with its franchisees. As Plaintiff asserts, analysis of the merits of Defendant BWI's improper party argument based on vicarious liability would be better suited for the summary judgment stage where this Court can consider the merits of Plaintiff's factual allegations based on more information provided by all parties through discovery.

to apply retroactively." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). Whether Congress intended a statute to apply retroactively is a question of statutory interpretation to which courts apply a presumption against retroactivity. *Id.* at 280. As a result, "where a statute is silent as to the scope of its application, the statute should not be applied retroactively." *Patel v. Gonzales*, 432 F. 3d 685, 690 (6th Cir. 2005) (citing *Landgraf*, 511 U.S. at 280)).

There is no language in 18 U.S.C. § 1595 that applies the "beneficiary theory" retroactively, nor did Congress give any indication that was its intent. *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020); *see also Griffin v. Alamo*, No. 4:14-cv-4065, 2016 WL 7391046, at *4 (W.D. Ark.) ("the Court finds that the financial beneficiary prong of § 1595(a), as amended, should not be applied retroactively"); *St. Louis v. Perlitz*, No. 3:13-cv-1132 (RNC), 2016 WL 1408076, at *3 (D. Conn. Apr. 8, 2016) ("Because the amended version of § 1595 has the effect of increasing defendants' liability for past conduct, it cannot be applied retroactively in the absence of a clear statement from Congress, which the statute lacks"); *cf. Velez v. Sanchez*, 693 F. 3d 308, 326 (2d Cir. 2012) (finding that the 2003 amendments to 18 U.S.C. § 1595 do not apply retroactively to conduct occurring before its effective date); *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) (same). As such, the "beneficiary theory" under 18 U.S.C. § 1595 cannot be applied retroactively to any conduct for which Defendant BWI could be liable prior to December 23, 2008.

T.P. alleges that she was trafficked at the Super 8 from approximately 2013–2015 and the Travelodge from 2013–2016. (ECF No. 1, ¶ 40). She also alleges she was trafficked at Defendant Red Roof's Columbus location from 2013–2015. (*Id.*). Because these allegations are tied to events occurring after the beneficiary theory amendment took effect, this argument is inapplicable to the

other defendants. Therefore, this Court **DISMISSES WITH PREJUDICE** any claims of liability

against **DEFENDANT BWI** arising from actions taking place before December 23, 2008.

## B.  Direct Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel

defendants in sex trafficking cases under the TVPRA in four cases with many factual similarities

to this one. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019);

*H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe*

*S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16,

2020); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020).

Like the Plaintiffs in the other related cases, T.P. has sued under the TVPRA.

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for

criminal penalties set forth in 18 U.S.C. § 1591:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
>> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil

liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

This Court held in *M.A.* and *H.H.* that § 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). This Court likewise finds that T.P.'s allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 1, ¶ 11).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). It is stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

12

This Court will assess these factors in a different order than provided in the statute to allow for a more logical progression of legal analysis.

### 1. Knowing benefit

This Court begins with an analysis of whether T.P. has sufficiently alleged that Defendants "knowingly benefited" financially from her trafficker's sex trafficking venture. The first element merely requires that Defendants knowingly receive a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). T.P. alleges that Defendants rented rooms to her traffickers and benefited financially. (ECF No. 1, ¶ 114). Therefore, Plaintiff pleads allegations sufficient to meet this element of the § 1595(a) standard.

### 2. Knew or should have known the venture was engaged in trafficking

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v.*

13

*Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). This Court has previously held that notice

of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps

to train staff in order to prevent its occurrence," and signs that "should have alerted staff to

[Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F.

Supp. 3d at 968.

Defendant Wyndham argues that its franchisor/franchisee relationship with the Super 8 and

Travelodge makes its connection to hotel staff too attenuated to conclude that Defendants had

constructive knowledge of T.P.'s abuse. (ECF No. 36 at 11). They maintain that Plaintiff's

conclusory allegations about Defendant Wyndham's extensive control over the hotels' operations

is not true. (*Id.* at 7). Even if Defendant Wyndham had more control over hotel staff, it maintains

that constructive knowledge under § 1595 requires something "more than a generalized awareness

that sex trafficking occurs in hotels or that the crime had occurred at the hotels at issue." (*Id.* at 9,

16 (citing *J.L.*, 521 F. Supp. 3d at 1064 ("Plaintiff alleges that Wyndham was on notice about the

prevalence of sex trafficking generally at its hotels. But this is not sufficient to show that Wyndham

should have known about what happened to this plaintiff.")); ECF No. 58 at 9 (citing *S.J. v. Choice

Hotels Int'l, Inc.*, 473 F. Supp. 3d 1147, 154 (E.D.N.Y. 2020) (concluding that plaintiff failed to

properly state a claim where they only alleged a franchisor's general knowledge of sex trafficking

in franchisee's hotel, not that franchisor defendant had "requisite knowledge of a specific sex

trafficking venture")). Similarly, Defendant BWI maintains that Plaintiff only alleges that

Defendants had a general awareness that trafficking occurred in hotels in the United States. (ECF

No. 40 at 9) (citing *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619, 2021 WL 5579117,

at *8 (D. Colo. Nov. 30, 2021) (finding that "[g]eneral knowledge of commercial sex activity

14

occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that a franchisor participated in the trafficking of plaintiff.")). Defendant BWI argues that Plaintiff makes no "specific allegations . . . suggesting [hotel] staff . . . would have been alerted to her alleged trafficking or that staff would have alerted BWI." (ECF No. 57 at 5).

In determining whether Plaintiff's allegations are sufficient, this Court is guided by two cases that establish the spectrum on which civil liability under the TVPRA can be found. First is *Ricchio v. McLean* where allegations contained fairly strong evidence that the hotel owner and the trafficker were working together and that the hotel owner intended to profit from the trafficking scheme. The allegations included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017). Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the Defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

On the other end of the spectrum is *Hillary Lawson v. Howard Rubin*, where plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women then sexually assaulting and abusing them at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations insufficient to hold Blue Icarus liable under § 1595 because Blue Icarus did not have reason to know about the human trafficking. The court explained:

First, plaintiffs have not cited any caselaw to support their argument that one visit by the police department and one ambulance sent to the residence over six years is sufficient to put the owner of the premises on notice of illegal activity. (Indeed, plaintiffs do not cite any cases at all for the standard for a property owner's duty to monitor the premises.). Plaintiffs did not claim that Blue Icarus had actual notice of the alleged activity, only that it should have known about alleged trafficking based on its duty to monitor the premises....

The only instance of polic[e] being called to the penthouse described in the amended complaint was when Cacciola called them after getting into a fight with Hallman. Assuming the facts in the complaint to be true and even assuming that Blue Icarus had a duty to investigate any time the police were called, there would not have been any reason for it to infer illegal conduct by Rubin or his employees based on why the police were called. In the only two instances of an ambulance or the police being called to the penthouse, any investigation by Blue Icarus would not have led to any more information about the alleged human-trafficking enterprise.

*Lawson*, 2018 WL 2012869, at **13–14.

Most of T.P.'s allegations rise to the level of obviousness present in *Ricchio*. First, Plaintiff argues that there were a number of red flags apparent to hotel staff at both hotels including cash payments for rooms, signs of physical abuse, and excessive requests for new linens and towels. (ECF No. 55 at 9). Regarding the Super 8, T.P. alleges that its was closed in June 2014 because of illegal activity on the premises, including allowing "drug dealers and pimps and prostitutes" to rent rooms. (ECF No. 1, ¶ 72). Plaintiff also cites to online reviews of the hotel stating former guests were "evicted from the hotel by the police due to the drug/prostitution ring being ran out of it." (*Id.*). Specifically, Plaintiff maintains that her trafficker openly beat her in the parking lot of the hotel. (*Id.*, ¶ 48). Regarding Defendant Wyndham's Columbus Travelodge location, Plaintiff alleges that a man named Mohammed, who she understood to be the owner of the Travelodge, traded rooms in the hotel with "Plaintiff's traffickers in exchange for sex acts from Plaintiff" and other trafficked women. (*Id.*).

16

T.P.'s allegations against the Columbus Best Western hotel include: (1) it was declared a public nuisance because it was trending toward being a "haven for prostitution"; (2) a police report details a woman telling police she worked out of a room at the hotel as a underage prostitute; (3) a statement from a convicted prostitute that the clerk at the hotel was "known to give prostitutes discounts on rooms if they have sex with him"; and (4) the same man named Mohammed who she understood to be the owner of the Best Western traded free or discounted rooms to her traffickers in exchange for sex from Plaintiff and the other women trafficked there. (ECF No. 1, ¶¶ 48, 72).

This Court finds that all Defendants had constructive knowledge of the trafficking occurring at their hotels because they "should have known" about the nature of the venture under the beneficiary theory's negligence standard. 18 U.S.C. § 1595. T.P. alleges that Defendant franchisors were on notice about the prevalence of sex trafficking at their hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence. (ECF Nos. 1, ¶¶ 62–63; 55 at 9). She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation. (*Id.*, ¶ 46). As such, Plaintiff argues that hotel Defendants' failure to act "incentivized their employees to ignore the obvious signs of human trafficking, and even rent rooms to known or suspected human traffickers, while they continued to profit from sex trafficking." (*Id.*, ¶ 52).

Even though Defendants maintain that the individual hotel employee's actual or constructive knowledge of trafficking is insufficient to impute knowledge on Defendants as franchisors (ECF Nos. 36 at 11; 40 at 9), Plaintiff's allegations are sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she alleges that the franchisors themselves had constructive knowledge of the problem. Several courts have found failure to

17

implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"). Here T.P. alleged that Defendants were on notice about the prevalence of sex trafficking at their hotels and failed to take steps to train staff to prevent its occurrence. Therefore, this Court finds that T.P..'s allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving these Motions to Dismiss.

### 3. Participation in a venture

Finally, this Court must decide whether Plaintiff alleged sufficient facts to demonstrate Defendants' conduct constituted "participation in venture" under § 1595(a). Here, T.P.'s trafficker had a sex trafficking venture. The question is whether the Defendant hotels were participating in a commercial venture related to T.P.'s trafficking by receiving "payment for rooms," "payments or kickbacks for internet usage," or by maintaining "the loyal customer base that fuels the supply and demand of sex trafficking." (ECF No. 1, ¶119).

Plaintiff asserts that Defendants "own[], supervise[], and/or operate[]" the Super 8, Travelodge, and Best Western, and therefore had a continuous business relationship with her traffickers who rented rooms there. (ECF No. 1, ¶ 18). Further, Plaintiff maintains that Defendants: (1) provide the software through which the rooms are booked and paid for; (2) advertise for the hotel locations; and (3) and establish stringent standards for use of the brand. (ECF Nos. 1. ¶¶ 55–57; 55 at 11; 58 at 5).

First, Defendant Wyndham counters that the hotels are subject to franchise agreements and owned and operated by third parties removed from Wyndham's control. (ECF Nos. 36 at 7; 58 at 3). Defendant Wyndham explains that franchise agreements simply provide "intellectual property to a third-party hotel operator" and cannot serve as "evidence of the association-in-fact necessary to establish the existence of a TVPRA 'venture.'" (ECF No. 58 at 6). Second, Defendant argues that Plaintiff's allegations present a novel theory that widens the definition of venture to include the entire hospitality industry because all hotels likely have received some room revenue from sex trafficking. (ECF No. 36 at 12, 15 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726-27) (holding that allegations that franchisors financially benefited from renting hotel rooms to sex traffickers does "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA")). Such a broad sweeping definition, Defendant Wyndham argues, does not support a plausible allegation for a motion to dismiss. (*Id.* at 15).

Both parties rely heavily on the Eleventh Circuit's recent decision in *Doe #1 v. Red Roof Inns, Inc.*, in which the Court held that "participation in a common venture" under 18 U.S.C. § 1595's beneficiary theory should be defined, based on its common definition as "an undertaking

or enterprise involving risk and potential profit." 21 F. 4th at 724. Defendant BWI relies entirely

on *Doe #1* and asks this Court to consider the Eleventh Circuit's opinion. (ECF Nos. 40, 57).

In *Doe #1*, Plaintiffs alleged that defendant hotel franchisors participated in "sex trafficking

ventures." *Id.* at 726. The Complaint included allegations that: (1) defendants licensed their brand

to franchisees who paid royalties to the defendants and other fees based on a percentage of their

room revenue; (2) defendants received a percentage of the revenue generated from the rooms in

which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw,

controlled the operation of, and/or were inextricably connected to the renting of rooms" at these

hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and

controlled training related to spotting trafficking; and (5) read online reviews mentioning

prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Id.* While

the court acknowledged that these allegations suggested that the franchisor defendants benefitted

financially from renting rooms to traffickers, they did not rise to the level of showing that "the

franchisors participated in a common undertaking involving risk or profit that violated the

TVPRA." *Id.* at 726–27. It should be noted that on appeal, Plaintiffs changed their theory and

argued instead that "the franchisors participated in commercial ventures to operate hotels and that

those hotel ventures violated the [TVPRA]." *Id.* at 727. Because Plaintiffs failed to raise this theory

to the district court and because they repeatedly referred to "sex trafficking ventures" in their

pleadings, the court declined to address Plaintiffs' new "commercial venture" theory. *Id.*

This Court has held that participation in a venture under § 1595 does not require actual

knowledge of trafficking crimes but requires "at least a showing of a continuous business

relationship between the trafficker and the hotels such that it would appear that the trafficker and

the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under the TVPRA does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.*, 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

While this Court respects the Eleventh Circuit's decisions, it is not controlling here. Further, the Eleventh Circuit's decision does not apply to the facts at hand. The court distinguished the "sex trafficking ventures" at issue in *Doe #1* from the plaintiff's "commercial venture" argument raised on appeal and chose not to address the plaintiff's commercial venture theory in that case. *Id.* at 727. Here, Plaintiff alleges that Defendants "participated in a commercial business venture under § 1595, by receiving royalties from Plaintiff's traffickers renting rooms at their branded locations," and through their expansive control of other hotel policies and operations, not that Defendants participated in the sex trafficking ventures themselves. (ECF Nos. 1, ¶¶ 54–64; 55 at 13). Defendant Wyndham's argument (ECF No. 58 at 6) that Plaintiff alleged that Defendants participated in "trafficking ventures" (ECF No. 1, ¶ 95) and "commercial sex ventures" (*Id.*, ¶ 132)

is misstated because both references appear in the Complaint under the context of Plaintiff's original conspiracy claim, which has since been dismissed. (ECF No. 56).

A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Despite the parties' differing allegations about Defendants' operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). Construing these allegations in favor of the Plaintiff, as required at this stage, this Court finds that Plaintiff's allegations that Defendants substantially oversaw operations and promulgated policies for franchisee hotels meet § 1595's definition of "participation in a venture. Here, Defendants were involved in a business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances.

Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendants are directly, civilly liable under the TVPRA. *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

### C. Joint and Several Liability

Plaintiff argues that all Defendants are jointly and severally liable for her damages under the TVPRA. (ECF No. 1, ¶ 30). Defendants do not appear to respond to this argument. Therefore, this Court will consider Defendant to have conceded this point.

### D. Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. Although Plaintiff argues it is unnecessary to establish a theory of indirect liability as she has pled sufficient facts to establish Defendants' direct liability under the TVPRA, Plaintiff maintains that she sufficiently alleged that Defendants exert a significant amount of control over the franchised locations under an agency and joint employer theory. (ECF No. 55 at 13). Specifically, she alleges that Defendants control the "business, operations, training, management, supervision, administration, and procedures" of the local hotels and engage in profit sharing. (*Id.* at 13–14 (citing ECF No. 1, ¶¶ 54–64)).

#### 1. *Agency and Vicarious Liability*

Defendant Wyndham argues that a franchisor's obligations to a franchisee under the Lanham Act, which "require[] supervision of trademark licensees" is meant to "ensure the integrity of the registered trademarks, not create a federal law of agency." (ECF No. 36 at 19 (citing *Oberlin v. Marlin Am. Corp.*, 596 F. 2d 1322, 1327–28 (7th Cir. 1979)); ECF No. 58 at 11 (citing *Brickner v. R&A Pizza, Inc.*, 804 F. Supp. 2d 615, 521–22 (S.D. Ohio 2022) (stating "[g]enerally, a franchisor is not the employer of employees of the franchisee"); *Ries v. McDonald's USA, LLC*, No. 1:20-cv-2, 2021 WL 5768436, at *5 (finding McDonald's did not "meaningfully participate

in employment decisions" to qualify as a joint employer, but simply controlled "conformity to standard operational details" inherent in franchisee settings)). Therefore, Defendant alleges that Wyndham's imposition of brand standards cannot give rise to agency because they do not control day-to-day operations of the hotels. (ECF Nos. 36 at 19; 58 at 12). Similarly, Defendant BWI asserts that where "a franchisor or brand does not have control of the subject premises . . . no agency relationship exists" and "the franchisor may not be held vicariously liable for civil claims." (ECF No. 40 at 11 (citing *Barrett-O'Neill v. Lalo, LLC*, No. 2:14-cv-194, 2014 WL 3895679, at *4 (S.D. Ohio Aug. 8, 2014)). BWI argues that the Complaint does not allege how BWI "exercises direct and immediate control over essential terms of the hotel locations of their employees." (*Id.*).

It is a long-standing principle of law in Ohio that "[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority." *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014). In determining whether there is an agency relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 126 N.E.2d 597, 599 (Ohio 1955)). Further, the right of control or control retained over the agent is directed "toward the attainment of the objective" which the principal seeks. *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1469 (S.D. Ohio 1990). It is also well established that "[t]he principal's right of control need not extend to every aspect of the alleged principal and agent's association." *Id.*

Agency theories are also applicable to the franchisor/franchisee relationship. Under Ohio law, "a franchisor may be vicariously liable for a franchisee's tortious conduct under a theory of

apparent agency." *Bricker*, 804 F. Supp.2d at 623. To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Plaintiff sufficiently details what aspects of the individual hotel locations Defendants Wyndham and BWI control. As previously summarized, Plaintiff alleges an agency relationship was created between the individual hotels and franchisor Defendants through Defendants' control of brand quality standards; use and placement of franchisor's name; local hotel's reservation systems, brand loyalty programs, and websites; and employment policies and procedures. (ECF Nos. 1 ¶¶ 54–56; 55 at 14–15 (citing *M.A.*, 425 F. Supp. 3d at 972)). The fact that both Defendants are in a franchise relationship with the respective, local hotels does not bar application of agency theory. (ECF No. 36 at 19). This Court, construing the facts in favor of Plaintiff, finds that these allegations sufficiently establish that Defendants' control over the local hotels is directed towards attaining more revenue and commercial success, which is the objective Defendants, as principals, seek. Therefore, they are sufficient to meet the pleading standards of Rule 8.

Defendant Wyndham separately argues that the Complaint lacks allegations sufficient to support a claim that the Super 8 franchisee violated the TVPRA, such that their actions can be imputed to their franchisors. (ECF No. 36 at 20 (citing *C.C. v. H.K. Group of Co., Inc.*, No. 1:21-cv-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 20221) (dismissing TVPRA claim against franchisee hotel operator because Plaintiff did not allege interaction between defendants and traffickers sufficient to establish a common undertaking)); ECF No. 58 at 13). Regarding the Travelodge, Defendant Wyndham argues that Plaintiff's allegations of crime and torts cannot

support an agency theory, because these acts typically "exceed the scope" of an agent's authority. (ECF No. 36 at 20–21 (citing RESTATEMENT (THIRD) OF AGENCY § 2.02, cmt. h (2006))).

Again, Plaintiff does not allege that Defendants are vicariously liable, but instead are directly liable underly the TVPRA beneficiary theory. Notably, Defendant Wyndham is correct that for an agency theory of vicarious liability to apply to Defendant, the hotel franchisees themselves must have committed a wrong to be imputed on Defendants. The three-pronged test established by 18 U.S.C. § 1595 and used by this Court to assess Defendants' direct liability is applicable to the hotel franchisees as well. First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1, ¶¶ 37–40). Second, Plaintiff argues that staff at the Wyndham Travelodge actually knew about the ongoing trafficking because the man believed to be the owner of the of the hotel traded free or discounted rooms with T.P.'s traffickers for sexual acts from her and other trafficked women. (*Id.*, ¶ 48). Even though Plaintiff alleged insufficient facts to establish that staff at Wyndham's Super 8 had actual knowledge of trafficking she alleged sufficient facts to demonstrate that employees at both the Super 8 and Travelodge had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking and signs of T.P.'s physical deterioration and abuse. (*Id.*, ¶¶ 44–46). Therefore, the second prong of the beneficiary theory is satisfied. Third, Plaintiff has alleged sufficient facts—that Wyndham's franchisee hotels, along with Defendants, benefited financially from renting rooms to traffickers and should have known trafficking was going on based on the totality of the circumstance—to meet § 1595's definition of "participation

26

in a venture" in a commercial setting that profited from A.R.'s sex trafficking. (ECF No. 1, ¶¶ 52, 119).

## 2. *Joint Employer Status*

Plaintiff alleges that under federal labor regulations, Defendants "are considered joint employers of the employees at their locations at which Plaintiff was trafficked." (ECF No. 1, ¶ 61). Defendant Wyndham responds that the joint employer doctrine is an "employment law concept that has been invoked in the franchise context to give franchisee employees grounds for suing franchisors under certain narrow circumstances." (ECF No. 36 at 18). Defendant Wyndham maintains that the "joint employer" doctrine, however, is not applicable here because it is "not a basis for imputing liability to third parties from a franchisee to a franchisor." (*Id.* (citing *Brickner*, 804 F. Supp. 2d at 621–22) (explaining that under the joint employer doctrine "an employee . . . may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.")). Regardless, Defendant argues Plaintiff lacks "well-pleaded" facts to even show Wyndham is a joint employer of the Super 8 and Travelodge staff. (*Id.*). Defendant BWI argues that a party is only a joint employer "if it exercises direct and immediate control over essential terms or conditions of another entity's employees." (ECF No. 40 at 11 (citing Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184, 11205 (Feb. 26, 2020)). BWI maintains that Plaintiff makes conclusory allegations and fails to allege how it exercise direct and immediate control over the hotel's location or employees. (*Id.* at 12; ECF No. 57 at 5–6).

Similar to the agency relationship inquiry, whether two employers are a joint employer often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n,*

*AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991)

(quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584

(6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of

operations between the companies, common management, centralized control of labor relations,

and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587,

594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03

C 2293, 2007 WL 734395, at *5–8, (N.D. Ill. March 8, 2007)) (adopting the test for Title VII joint

employer status: "(1) the extent of the employer's control and supervision over the worker,

including directions on scheduling and performance of work; (2) the kind of occupation and nature

of skill required, including whether skills are obtained in the work place; (3) responsibility for the

costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of

operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or

expectations."). The Sixth Circuit has recognized that the employer control theory and the agency

theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002).

 Other than to state that Defendants are each "considered joint employers of the employees

at their locations" under federal regulations, T.P. has not alleged facts specific to the joint employer

allegation. Her facts supporting an agency relationship, however, could plausibly demonstrate the

element of control necessary to establish joint employer status. Therefore, because she alleged

sufficient facts to establish an agency relationship between hotel employees and Defendants, her

allegations about joint employer status meet the pleading standard for the same reasons as above.

### E. Group Pleading

Defendant Wyndham argues that the Complaint impermissibly "offers general allegations about 'consistent red flags' and adherence to 'a common policy of harboring known and suspected human traffickers in exchange for financial benefit' without any attempt to tie any particular allegations to any particular hotel." (ECF No. 36 at 8). Federal Rule of Civil Procedure 8 requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atlantic Corp.*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The impermissibility or permissibility of "group pleading" is most common in cases alleging corporate fraud where it is more difficult for plaintiffs to meet the requirements set out in Federal Rule of Civil Procedure 9(b)—that is, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Within the fraud context, other courts have concluded that general pleadings are permissible even where there are multiple defendants so long as the "grouping" does not resemble a "monolith." *See City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1338–39) (citing *Fondren v. Schmidt*, 626 F. Supp. 892, 898 (D. Nev. 1986) (recognizing that in cases involving multiple defendants, a plaintiff should allege the role of each of them, but also noting that "group conduct may be pleaded" when "a category of defendants is allegedly responsible for a continuing course of conduct")).

Fraud carries a heightened pleading standard under Federal Rule of Civil Procedure 9(b) that is not applicable to Plaintiff's allegations because she does not plead fraud. Our sister district's analysis of fraud-related group pleadings, however, is instructive in this case where the pleading burden is lower. Plaintiff initially brought the TVPRA claim against corporate hotel entities and

associations claiming they were responsible for the continuation of T.P.'s trafficking in hotels they owned or were associated with in Columbus. (ECF No. 1, ¶ 116–20). T.P. alleges that not only were Defendants generally aware of ongoing trafficking in their hotels but also alleges specific facts about signs of her own trafficking in the Columbus hotels that would have made Defendants constructively aware of her situation. (*Id.*, ¶¶ 50–52). T.P. does not have to meet a heightened pleading standard, yet she does here. This Court is satisfied that Plaintiff sufficiently pled that all Defendants were responsible "for a continuing course of conduct," even though Defendants Wyndham and BWI are currently the only defendants remaining. *Fondren*, 626 F. Supp. at 898; (ECF Nos. 23, 42, 51). To the extent the allegations are attributable to prior defendants instead of Wyndham, that conclusion will become apparent through the discovery process. *City of Morristown*, 206 F. Supp. at 1339.

Further, Plaintiff does state allegations specific to Wyndham's hotels: (1) that T.P.'s traffickers beat her in the parking lot of the Super 8 hotel and hotel staff did not interfere; and (2) that a man believed to be the owner of the Travelodge where she was trafficked, traded hotel rooms with T.P.'s traffickers in exchange for sex with T.P. (ECF No. 1, ¶ 48). Paragraph 52 alleges that Wyndham and other defendants maintained "policies and procedures that they knew or should have known incentivized their employees to ignore obvious signs of human trafficking, and even rent rooms to known or suspected human traffickers, while they continued to profit from sex trafficking." While Plaintiff made the same allegations against the other defendants, this is not a situation where "[p]laintiff simply incorporated all of his previous allegations by reference, set forth a list of the defendants he intended to include in each count, and then pled a series of legal conclusions." *Ingris v. Borough of Caldwell*, No. 14-855 (ES), 2015 WL 3613499, at *8 (D.N.J.

Jun. 9, 2015). Plaintiff named Wyndham in her Complaint and made allegations specific to its failure to prevent her sex trafficking. Therefore, T.P. has pled sufficient facts particular to Wyndham to meet Rule 8 notice requirements for purposes of surviving this Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant Wyndham's Motion to Dismiss is hereby **DENIED.** Defendant BWI's Motion to Dismiss is hereby **GRANTED in part** with regards to its TVPRA retroactivity argument **and DENIED in part** with regards to Defendant BWI's remaining arguments.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

DATE:  December 01, 2022